UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

GUY CARPENTER & COMPANY, LLC,

                Plaintiff,

against                                      10 Civ. 4932 (CM) (KNF)

LOCKTON RE, LP, and
LOCKTON INSURANCE AGENCY, INC.,

                Defendant.
---------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/10

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

McMahon, J.

Defendants Lockton Re, LP and Lockton Insurance Agency, Inc. (collectively "Lockton") move this Court for an order dismissing under Federal Rule of Civil Procedure 12(b)(6) the three claims pled by Plaintiff Guy Carpenter & Co., LLC ("Guy Carpenter") in its Complaint. Guy Carpenter commenced this action alleging conversion (Count I), tortious interference with contract (Count II), and unjust enrichment (Count III). For the reasons that follow, Lockton's motion to dismiss is denied as to counts I and II and granted as to count III.

### I. BACKGROUND

Guy Carpenter is a reinsurance intermediary and Lockton is a competitor.[1] (Compl. ¶¶ 3, 5.)

---

[1] To reduce the risks on policies it has written, insurance companies enter into reinsurance agreements. In a reinsurance agreement, the insurance company cedes some of its risks and a share of the premiums it receives from its policies to the reinsurer. "Reinsurance has thus been generally defined as a contract under which one party, the reinsurer, agrees to indemnify another, the reinsured, either in whole or in part, against loss or liability, which the reinsured may sustain under a separate contract of insurance with the original insurer." Insurance companies (*i.e.*,

1

Zephyr Insurance Co. ("Zephyr") retained Guy Carpenter as its reinsurance broker in 2000 (Compl. ¶ 10). On December 13, 2006, Zephyr entered into a Broker Services Agreement with Guy Carpenter. (Decl. of Pieter Van Tol ("Van Tol Decl.") Ex. 1.) The Broker Agreement specifies that it is terminable at will. (Id.)

Safe Harbor Insurance Co. ("Safe Harbor") became a Guy Carpenter client when Carpenter acquired a company called John B. Collins Associates in April 2009. (Compl. ¶ 9.) Attached to the moving papers is a two page, unsigned "Reinsurance Intermediary Authorization" between Safe Harbor and Guy Carpenter; the document has an "effective date" of March 1, 2006. (Van Tol Decl. Ex. 2.)[2] However, the complaint specifically alleges that Safe Harbor did not become a client of Guy Carpenter's until 2009; I assume that this agreement was entered into subsequent to Guy Carpenter's acquisition of John B. Collins and was given an effective date co-terminus with the date in a previous contract between Collins and Safe Harbor.

Guy Carpenter alleges that, on or before June 1, 2009, Carpenter placed three reinsurance contracts for Zephyr and four for Safe Harbor, all covering losses incurred between June 1, 2009 and May 31, 2010 (the "Reinsurance Contracts"). (Compl. ¶¶ 12–13; Van Tol Decl. Exs. 3–9.) For placing these Reinsurance Contracts, Guy Carpenter earned a substantial brokerage fee: approximately $2 million from Zephyr and $365,000 from Safe Harbor. (Compl. ¶¶ 12–13.) In

---

the reinsureds) access the reinsurance market via reinsurance brokers like Guy Carpenter. See generally Am. Jur. Ins. § 1809.

[2] Although copies of the Broker Agreements are not attached to the complaint, the agreements are integral to Guy Carpenter's claims, were relied on by it in crafting the complaint, and were documents that it clearly knew of when filing this suit. Thus, although not specifically attached to the complaint, the agreements may nonetheless be considered by this Court on Lockton's motion to dismiss. See Ackerley Media Group, Inc. v. Sharp Elecs. Corp., 170 F. Supp. 2d 445, 447 (S.D.N.Y. 2001).

2

Case 1:10-cv-04932-CM Document 28 Filed 11/04/10 Page 3 of 9

both instances, Guy Carpenter alleges, that it earned the entirety of the brokerage fees for those placements upon commission (June 1, 2009). (Id. ¶¶ 11–13.)

Guy Carpenter alleges that the parties agreed that the brokerage fee would be paid by allowing Guy Carpenter to retain a percentage of the quarterly premium payments made by Safe Harbor and Zephyr to the reinsurers for these Reinsurance Contracts. (Id. ¶¶ 12–13.). As is the custom in the reinsurance industry, Guy Carpenter's compensation was an agreed-upon percentage of the quarterly reinsurance premiums transmitted by its clients to the broker's fiduciary account. Out of that sum, Carpenter was entitled to retain funds equal to the agreed-upon percentage, and had the fiduciary obligation to its client to remit the balance to the reinsurers to pay for coverage under the Reinsurance Contracts. (Id. ¶ 3). In a conference with the Court, the parties admitted that the reinsurers allow the broker intermediary (*i.e.*, Guy Carpenter) to take an agreed-upon percentage from the quarterly premium payments owed to the reinsurers by the reinsured (in this case, Zephyr and Safe Harbor). There were, apparently, no direct financial dealings between Zephyr and Safe Harbor, on the one hand, and the various companies that agreed to reinsure part of their risk, on the other.

On October 8, 2009, Zephyr and Safe Harbor notified Guy Carpenter of their intent to use a different broker, Lockton. (Id. ¶ 14.) This allegedly occurred when a particular broker, John Daum, left Guy Carpenter for new employment at Lockton. (Id.) In due course, Guy Carpenter transferred the broker relationship and the files for the reinsurance contracts for Zephyr and Safe Harbor to Lockton. (Id. ¶ 15.) In accordance with industry custom and practice, Lockton, as the new broker, took on the responsibility of transmitting Zephyr's and Safe Harbor's premium payments to the reinsurers whose business had been procured by Guy Carpenter —and for which Guy Carpenter was still owed a brokerage commission.

Although the full commission allegedly was earned in June 2009, when the business was placed, Zephyr and Safe Harbor had paid only a quarter of their premiums to Guy Carpenter for retransmission to the reinsurers, and so had paid Guy Carpenter only a portion of the brokerage fee they owed for the placement of those policies before the move to Lockton. (Id. ¶¶ 12–13; 15–17.) Guy Carpenter alleges that the move to Lockton did not terminate Zephyr's and Safe Harbor's obligations to pay Guy Carpenter's brokerage fee in full, and that Lockton had a legal duty to deduct that unpaid brokerage from Zephyr's and Safe Harbor's remaining premium payments and to remit the unpaid brokerage fees to Guy Carpenter. (Compl. ¶¶ 15–16.) The Complaint alleges that Lockton failed to do so. (Id.)

Guy Carpenter alleges that it is still owed approximately $1,400,000 on the Zephyr Reinsurance Contracts and approximately $182,000 on the Safe Harbor Reinsurance Contracts. (Id. ¶ 17.)

On June 24, 2010, Guy Carpenter commenced this action, asserting claims for conversion, tortious interference with contract, and unjust enrichment. Specifically, Guy Carpenter alleges that (1) Lockton unlawfully retained the agreed-upon percentage of Zephyr's and Safe Harbor's premium payments that belong to Guy Carpenter (Count I); (2) by refusing to give Guy Carpenter its portion of the premium payments, Lockton has willfully and maliciously interfered with the contracts between Guy Carpenter, Zephyr, and Safe Harbor (Count II); and (3) Lockton was unjustly enriched by retaining Guy Carpenter's portion of the premium payments (Count III). Lockton seeks dismissal of all three counts for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must take as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations and alterations omitted).

### A. The Motion to Dismiss Guy Carpenter's Claim For Conversion Is Denied.

In New York, conversion is the unauthorized dominion over personal property of another which interferes with the rightful owner's legal title or superior right of possession. LoPresti v. Terwilliger, 126 F.3d 34, 41–42 (2d Cir. 1997); see also Seanto Exps. v. United Arab Agencies, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001). "Money can be the subject of a conversion action 'where there is a specific identifiable fund, and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" Gateway Overseas, Inc. v. Nishat (Chunian) Ltd., 2006 U.S. Dist. LEXIS 49272, at *7 (S.D.N.Y. July 13, 2006) (quoting Mfrs. Hanover Trust Co. v. Chem. Bank, 559 N.Y.S.2d 704, 711 (N.Y. App. Div. 1990)).

Lockton argues that the conversion claim should be dismissed because Guy Carpenter has not alleged that it has legal ownership to specific identifiable funds. Lockton's argument is unpersuasive.

Pursuant to the Broker Agreements, Guy Carpenter earned its full brokerage fee "upon the placement of [the] reinsurance contract" or "inception date of the reinsurance contracts" whichever comes first. (Compl. ¶¶ 11–13; Van Tol Decl. Ex. 1 App. B; Ex. 2 ¶ VII.) That means that Zephyr and Safe Harbor were legally obligated to pay the full amount of the commission to Guy Carpenter on June 1, 2009 (when the Reinsurance Contracts were placed). The fact that the contract allowed Zephyr and Safe Harbor to pay that commission in installments is irrelevant; they owed Guy Carpenter the entire amount as soon as the reinsurance was placed.

The Complaint further alleges that Zephyr and Safe Harbor were to remit their quarterly premiums for the reinsurance to their broker, not to the reinsurers directly. Pursuant to industry custom, Guy Carpenter was to deduct a fixed percentage of the quarterly premium payments made by Zephyr and Safe Harbor and pay the balance to the reinsurer. These allegations sufficiently identify a specific fund of money to which Carpenter claims title. Carpenter's brokerage fee was not simply an amount of money to come from Zephyr's or Safe Harbor's (or a reinsurer's) general funds; it was a specified percentage of an amount paid by Zephyr and Safe Harbor in trust for further transmission to the reinsurer as premiums for coverage secured.

The allegations of fact in this case are closer to those in Bill Marek's The Competitive Edge, Inc. v. Mickeson Grp., Inc., 806 N.E.2d 280, 285–86 (Ill. App. Ct. 2004)—where sales commissions were deemed an identifiable chattel because, *inter alia*, the commissions were money transferred to the defendant from an outside source and the money was specifically

6

identified in a sales agreement—than to McCalla v. SUNY Downstate Med. Ctr., 2006 U.S. Dist. LEXIS 38175, at **31–32 (E.D.N.Y. June 8, 2006), where Judge Bianco dismissed a conversion claim because the plaintiff made only a generic assertion that defendant converted "fees due" to plaintiff. Here, Guy Carpenter alleges that Zephyr and Safe Harbor paid money to Lockton with the understanding that Lockton would deduct any brokerage commissions earned by Guy Carpenter and pay Guy Carpenter from those specific funds. Guy Carpenter has, therefore, alleged that Lockton had an "obligation to . . . treat in a particular manner the specific fund in question." Mfrs. Hanover Trust Co. v. Chem. Bank, 559 N.Y.S.2d 704, 711 (N.Y. App. Div. 1990).[3] For this reason, the motion to dismiss the first cause of action is denied.

## B. The Motion to Dismiss Guy Carpenter's Claim for Tortious Interference with Contract Is Denied.

Lockton contends that Guy Carpenter's claim for tortious interference with contract should be dismissed for three reasons: First, the Broker Agreements are terminable at will and therefore cannot be the basis for a tortious-interference claim. Second, the Complaint is devoid of any allegations regarding the existence of a contract at the time of Lockton's alleged interference. Third, there are no allegations that Zephyr and Safe Harbor breached their contracts with Guy Carpenter.

Lockton is correct that in New York, a contract that is terminable at will cannot form the basis for a claim of tortious interference with contract. See, e.g., Snyder v. Sony Music Entm't Inc., 684 N.Y.S.2d 235, 239 (N.Y. App. Div. 1999). But Zephyr's and Safe Harbor's ability to terminate their broker relationship with Guy Carpenter at any time does not terminate their

---

[3] I note that in both Broker Agreements, Guy Carpenter agreed that it was a fiduciary for such funds. The complaint does not allege that Lockton was a fiduciary to Zephyr and Safe Harbor with respect to the premiums paid by them, but I would imagine that under industry custom, Lockton in fact held any such funds as a fiduciary.

previously incurred contractual obligation to pay Guy Carpenter its brokerage fee, which, as already discussed, was fully earned at the time the Reinsurance Contracts were placed.

The parties do not dispute that as of June 1, 2009, when the Reinsurance Contracts were placed, Guy Carpenter had an iron-clad right to full payment of its brokerage fee. See XL Specialty Ins. Co., v. Carvill Am., Inc., 2007 WL 1748157, at *10 (Conn. Super. Ct. May 31, 2007). While Zephyr and Safe Harbor were free to switch brokers, they were not free to shirk their contractual obligation to pay Guy Carpenter its brokerage fee. See Hamond & Co., v. Risk Specialists Co. of N.Y., Inc., 619 N.Y.S.2d 744, 745 (N.Y. App. 1994); see also Benfield, Inc. v. Moline, No. 04-3513, 2006 WL 452903, at **14–15 (D. Minn. Feb. 22, 2006).

Guy Carpenter alleges that Lockton was fully aware of Zephyr's and Safe Harbor's obligations under the Broker Agreements to pay Guy Carpenter's full brokerage fee. (Compl. ¶¶ 16–17.) Lockton nonetheless refused to forward to Guy Carpenter its portion of the premium payments when Lockton received the money from Zephyr and Safe Harbor. These allegations satisfy three of the four elements that must be pled in a tortious-interference-with-contract cause of action: (1) existence of a contract, (2) defendant's knowledge of that contract, and (3) defendant's intentional procurement of a breach. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (N.Y. 1996). Moreover, Guy Carpenter alleges that it has not received its full brokerage fee (Compl. ¶ 17) which, if proven, is a breach of the Broker Agreements—the final element of a tortious-interference-with-contract claim. Lama Holding Co., 88 N.Y.2d at 424. Accordingly, Lockton's motion to dismiss the second cause of action is denied.

## C. The Motion to Dismiss Guy Carpenter's Claim For Unjust Enrichment Is Granted.

Guy Carpenter also asserts a claim for unjust enrichment. Lockton argues that this claim is precluded by the existence of a valid contract.

New York courts do not allow unjust-enrichment claims when there is a valid contract between the parties governing the subject matter at issue. Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320, 2008 WL 4615896, at *12–13 (S.D.N.Y. Oct. 15, 2008); Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009). Guy Carpenter alleges that Lockton has wrongfully retained a portion of its unpaid brokerage fee. Guy Carpenter's right to that unpaid brokerage fee, and Zephyr's and Safe Harbor's obligations to pay it, is governed by the Broker Agreements. As such, an unjust-enrichment claim is improper. Lockton's motion to dismiss the third cause of action is granted.

Further, Lockton requests that the Court dismiss Guy Carpenter's claim for punitive damages because, after the present motion, no substantive cause of action will survive. Lockton's motion to dismiss the punitive-damages claim is denied because the first and second causes of action survive.

### III. CONCLUSION

For the reasons discussed, Lockton's motion to dismiss is denied as to Counts I and II. Counts III is dismissed.

Dated: November 4, 2010

*[signature]*

U.S.D.J.

BY EFC TO ALL COUNSEL

9